UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER J. LIMONE, OLYMPIA LIMONE, PETER J. LIMONE, JR., PAUL LIMONE, CAROLYN LIMONE ZENGA, JANINE LIMONE ARRIA, SAVERIO TAMELEO individually, and as the ADMINISTRATOR OF THE ESTATE OF ENRICO (HENRY) TAMELEO, and as the ADMININSTRATOR OF THE ESTATE OF JEANNETE TAMELEO, and ROBERTA WERNER Individually, and as the EXECUTRIX OF THE ESTATE OF LOUIS GRECO, and as the ADMINISTRATRIX OF THE ESTATE OF LOUIS GRECO, JR., <br><br>Plaintiffs, <br><br>v. <br><br>UNITED STATES OF AMERICA, H. PAUL RICO, DENNIS CONDON, JOHN MORRIS, JOHN CONNOLLY, JAMES L. HANDLEY, EDWARD F. HARRINGTON, FRANK L. WALSH and ROBERT RENFREW, <br><br>Defendants. | C. A. 02-CV-10890-NG |

## OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS BY THE LIMONE AND TAMELO PLAINTIFFS

The Limone and Tameleo plaintiffs file this opposition to the government's motion to dismiss. The opposition is based upon the original complaint as filed, and also on allegations made in a proposed amended complaint which plaintiffs are seeking leave to file.

49

I. PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM UNDER THE FTCA BASED UPON THE TORT OF MALICIOUS PROSECUTION.

The government has made a series of challenges to plaintiffs' malicious prosecution theory of FTCA liability. Plaintiffs submit that the claim is not barred by the discretionary function exemption. Plaintiffs further submit that federal law enforcement agents did initiate or procure the malicious prosecution and were sufficiently involved in the prosecution that the government is liable for the prosecution and its continuation. Plaintiffs do not challenge the government's argument that FTCA liability for malicious prosecution cannot be imposed based upon the actions by AUSA Edward Harrington. At the same time, it is clear that the actions of FBI agents do provide a sufficient basis for FTCA liability based on malicious prosecution.[1]

 A. Plaintiffs' FTCA Claim is not Barred by the Discretionary Function Exemption.

The government has argued that plaintiffs' claim that government agents failed to disclose exculpatory evidence is barred by the discretionary function exemption to the FTCA. The government argues that the FBI has discretion with regard to sharing information in its investigative files. The argument entirely ignores, however, the fact that the conduct of FBI agents in this case violated the plaintiffs' constitutional rights.

It is well established that the discretionary function exemption does not apply where the conduct of government agents violated the Constitution. *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); *U.S. Fidelity & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir.

2

1987); *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir.1975) ("It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally ..."); *O'Ferrell v. United States*, 968 F.Supp. 1519, 1527 (M.D.Ala. 1997); *Garcia v. United States*, 896 F.Supp. 467, 473 (E.D. Pa. 1995); *Koch v. United States*, 814 F.Supp. 1221, 1228 (M.D.Pa. 1993); *Avery v. United States*, 434 F.Supp. 937, 944 (D. Conn. 1977) ("If trespasses in violation of government regulations are not 'discretionary functions,' then, a fortiori, trespasses in violation of constitutional guarantees are not 'discretionary functions.'"). See also, *Medina v. United States*, 259 F.3d 220, 226 (4th Cir. 2001) (recognizing application of discretionary function exemption for actions "authorized and implemented consistent with federal law and the Constitution of the United States"). [2]

Here, as in *Glickman v. United States*, 626 F.Supp. 171, 175 (S.D.N.Y. 1985) (citizen was administered LSD by CIA agents without his permission or knowledge, in violation of his constitutional rights), the government's argument:

> really does not reckon with the extraordinary nature of the allegations made by plaintiff in this case. What plaintiff is alleging is conduct of such a serious and malevolent nature as to be beyond any reasonable discretion on the part of a Government agency. Plaintiff is alleging something which does not involve normal regulatory activities or the weighing of policy factors within the scope of proper governmental power, but rather something which goes beyond the constitutional powers of the Government, and seriously violates the constitutional rights of a citizen. It cannot be said that Congress meant to withdraw this kind of allegation from judicial scrutiny under the 'discretionary function' exception.

---

[1] FTCA liability based on the torts of negligent selection, supervision and retention of agents and employees, upon intentional infliction of emotional distress, and by common law conspiracy is not excluded by § 2680 and thus liability for these torts is not restricted to acts of law enforcement agents.

[2] Although constitutional claims themselves are not actionable under the FTCA, where a claim is based on state law the fact that the defendants' actions also violated the Constitution does not take the case out of the FTCA. *Garcia v. United States*, 896 F.Supp. at 474-475, collecting the supporting authority and noting that there is no authority to the contrary. The propriety of such a claim was implicitly recognized by the Supreme Court in *Carlson v. Green*, 446 U.S. 14, 19-20 (1980), where the Court found that the same conduct might give rise to both *Bivens* and FTCA actions.

Plaintiffs have alleged both that FBI agents failed to disclose exculpatory evidence to the prosecutors who tried the criminal case against them,[3] and that FBI agents participated in the creation of perjured testimony that falsely inculpated the plaintiffs.[4] Federal agents do not have discretion to engage in these alleged constitutional violations.

It is clear that law enforcement officers have a constitutional duty to disclose potentially exculpatory evidence to prosecutors. *Brady v. Maryland*, 373 U.S. 83 (1963); *Reid v. State of New Hampshire*, 56 F.3d 332, 342 (1st Cir. 1995) (recognizing viability of § 1983 claim against officers for not disclosing exculpatory information to prosecutor; reversing district court for abuse of discretion in not permitting plaintiff discovery on officers' knowledge of exculpatory material before granting summary judgment for officers); *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) (withholding from prosecutors information about officers' coaching of witnesses and fact that witnesses earlier selected pictures from a book of mug shots that did not contain plaintiff's photo, violated his rights as criminal defendant); *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000) (police who deliberately withhold exculpatory evidence and thus prevent prosecutors from complying with Brady, violate due process clause); *McMillian v. Johnson*, 88 F.3d 1554 (11th Cir. 1996)(intentionally withholding exculpatory and impeachment evidence from the prosecutor would violate plaintiff's rights); *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988)(liability based on police custom of maintaining information in "street files" not furnished to prosecutors, with the result that exculpatory material is not made available to defendants).

It is equally clear that suborning perjury and manufacturing evidence violate the

---

[3] Compl. ¶¶ 24, 26, 27-41.
[4] Compl. ¶ 23.

constitutional rights of a criminal defendant. *Moran v. Clarke*, 296 F.3d 638 (8th Cir., *en banc*, 2002) (conspiracy to manufacture and manufacturing false evidence violates substantive due process rights); *Rowe v. Fort Lauderdale*, 279 F.3d 1271 (11th Cir. 2002) (investigator's planting or fabricating evidence in an effort to obtain a conviction violates clearly established law); *Paine v. Lompoc*, 265 F.3d 975 (9th Cir. 2001) (absolute witness immunity for committing perjury and conspiring to commit perjury does not shield officers from non-testimonial acts such as fabricating evidence, officers are not entitled to absolute immunity for conspiratorial conduct not "inextricably tied" to their testimony; immunity does not protect officers from tampering with documentary or physical evidence or preventing witnesses from coming forward); *Wilson v. Lawrence Co., Mo.*, 260 F.3d 946 (8th Cir. 2001) (liability for coercing statement from third person; although witness would have had absolute immunity for false testimony, officers are not protected by that immunity); *Spurlock v. Satterfield*, 167 F.3d 995, 1004 (6th Cir. 1999) (officers would be liable where they knew witness's testimony was false, supplied him with details of the murder, fabricated probable cause, created a misleading tape recording, gave the witness "hush money").

It follows that suborning perjury and manufacturing evidence are an appropriate basis for FTCA liability, not foreclosed by the discretionary function exemption. See, *Tri-State Hospital Supply Corporation v. United States*, 142 F.Supp.2d 93 (D.D.C. 2001) (recognizing in FTCA claim that customs officials had no discretion to falsify records and to lie to bring about a prosecution); *Merritt v. Shuttle, Inc.*, 13 F.Supp. 2d 371, 380 (E.D.N.Y. 1998) (discretionary function exemption did not apply to conduct of FAA inspectors who "conspired to place blame upon plaintiff"); *Chandler v. United States*,

875 F.Supp. 1250, 1266 (N.D. Tex. 1994) (giving false testimony and withholding material evidence from prosecutor fell outside discretionary function exemption); *Crow v. United States*, 659 F.Supp. 556, 569 (D.Kan. 1987) (where agents' memoranda, status reports, presentation letter and testimony before grand jury contained many inaccuracies and falsehoods, the discretionary function exemption did not bar an FTCA claim based on a malicious prosecution).

In addition to the fact that fabricating evidence and failing to disclose exculpatory evidence violate constitutional rights, it is likely that such conduct violates the regulations, rules, policies and procedures that govern FBI agents. Where certain conduct is required of federal employees by regulations and policies, including informal agency rules and pronouncements, the discretionary function exemption does not apply. *Irving v. United States*, 162 F.3d 154, 163-164 (1st Cir., *en banc*, 1998). Plaintiffs have not yet had an opportunity to conduct discovery in this matter. Given that, it would be premature to grant the motion to dismiss at this time.[5] Prior to ruling on a motion to dismiss, a district court "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). *See, Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)(approving district court's procedure of allowing discovery on jurisdictional issues); *Majd-Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)("the district court's dismissal [on jurisdictional grounds] without affording the plaintiff any opportunity to proceed with reasonable discovery was premature and an abuse of the court's discretion"); *Wells Fargo*

---

[5] It would, however, be appropriate for the Court to deny the motion to dismiss based on the fact that the agents had no discretion to violate the plaintiffs' constitutional rights.

6

& Co. v. Wells Fargo Express Co., 556 F.2d 406, 431 n. 24 (9th Cir. 1977) (discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts is necessary."

Defense lawyers seek discovery of exculpatory evidence in every criminal case, and considering the constitutional imperative for prosecutors to furnish such evidence, it is highly unlikely that FBI regulations and policies do not address the issue of an agent's responsibility to make such evidence available to prosecuting authorities. It is also likely that FBI regulations and policies address the handling of witnesses and informants in respects that would be relevant to the subornation of perjury allegations in this case. The Court should rule that plaintiffs are entitled to discovery on these issues before any dispositive motions may be granted in the government's favor with regard to the discretionary function exemption.

    B.    <u>Federal Law Enforcement Agents were Responsible for the Initiation and Continuation of the Criminal Prosecution of Plaintiffs.</u>

The government's attack on plaintiffs' malicious prosecution claim is based on the faulty premise that "the most that the Complaint alleges is that the FBI provided information to the prosecution."[6] On the contrary, the complaint alleges that "before and during the trial" FBI agents "suborned from and assisted the principal Commonwealth witness Barboza in committing perjury" in his testimony.[7] The significance of this testimony to the prosecution of plaintiffs is demonstrated by the fact that once Barboza's credibility had been undermined by FBI documents that were furnished for the first time in December, 2000, the Commonwealth nolle prossed the case, having concluded "that it does not now have a good faith basis – legally or ethically – to proceed with any further

---

[6] Gov't. brief, 12.

prosecution of [Limone]."[8]  The active role of the federal government's agents in this prosecution included the fact that "on diverse dates between the murder of Deegan and the present," they "engaged in numerous acts to keep secret information and evidence exculpatory" to plaintiffs and "to cover up the identity of the true killers of Deegan."[9] These acts, which included dissuading Barboza from recanting his testimony, assisting Barboza to obtain a light sentence for a murder in another jurisdiction, opposing a polygraph for Barboza, and interfering with plaintiffs' efforts to obtain commutations, are detailed in the complaint.[10]

Contrary to the government's argument, this was by no means a prosecution where federal agents gave information to a third person (state officials) and then left it "to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit."[11]  Here plaintiffs have alleged that the federal government agents remained involved with the prosecution throughout, including decades of post-conviction proceedings.

Plaintiffs submit that the foregoing allegations are sufficient to establish FBI agents' responsibility for the malicious prosecution in this case.  For the sake of further clarification, plaintiffs are also moving to amend their complaint to specify that it was the FBI agents who developed Barboza as a cooperating witness and induced or coerced him into cooperating with state authorities, that they assisted Barboza in developing his perjured testimony prior to his grand jury appearance, that they provided Barboza with material support in exchange for his testimony, that they encouraged state prosecutors to bring the case against Limone, Tamelo and Greco, although they knew these men were

---

[7]  Compl. ¶ 23.
[8]  Compl. ¶ 20.
[9]  Compl. ¶ 26.
[10] Compl. ¶¶ 27-41.

innocent, in order to protect FBI informant Flemmi, and that the District Attorney for Suffolk County acknowledged that the prosecution was a direct result of the FBI actions.[12]

The government takes an overly narrow view of the circumstances under which law enforcement officers may be held liable for malicious prosecutions under Massachusetts law. The cases cited by the government actually stand only for the proposition that where one's exclusive connection to a prosecution is the mere supplying of information and where one has left the matter to the "judgment and responsibility" and "uncontrolled choice" of others, there is no liability for malicious prosecution. See, *Correllas v. Viveiros*, 410 Mass. 314 (1991); *Conway v. Smerling*, 37 Mass. App. Ct. 1 (1994); *Ziemba v. Fo'cs'le, Inc.* 19 Mass.App.Ct. 484, 488 (1985). It is clear, however, that where a defendant has done almost anything else in addition to that, he may be held liable for initiating and/or continuing a malicious prosecution.[13]

Thus in *Conway v. Smerling*, 37 Mass. App. Ct. at 5, the defendants "did no more than inquire about the progress of an investigation," and yet the court held that "taking that evidence most favorably to the plaintiff, it could be said that they were the instrument of the complaint." In *Ziemba v. Fo'cs'le, Inc.* 19 Mass.App.Ct. at 488, the court distinguished cases in which the police made an independent decision to initiate a prosecution from those in which a defendant has "furnished the police with false information to influence their actions." In *Carroll v. Gillespie*, 14 Mass.App.Ct. 12, 25

---

[11] Gov't. brief, 13.
[12] Motion to Amend Complaint, ¶ 23.
[13] *Correllas v. Viveiros, supra,* on which the government relies heavily, is readily distinguishable from the instant case. There the malicious prosecution defendant: provided information to police while she was a suspect in a theft already under investigation. The prosecutor, in his affidavit, stated that, '[a]t no time did [defendant] come forward of her own free will and offer information concerning the missing

(1982), where a creditor told the police officer that "'he wanted the police to arrest' the plaintiff, or at least that he 'wanted her brought into court,'" the court held that there was sufficient evidence that the defendant creditor had initiated the prosecution.[14]

In *Seelig v. Harvard Cooperative Society*, 355 Mass. 532 (1969), a police officer initiated a criminal complaint against the plaintiff for larceny from a camera shop. The officer was employed one day per week in the shop, but there was no evidence he was working at the shop on the days he conducted his investigation or procured the complaint. He did have frequent conversations with the defendant's assistant general manager, who had initiated the train of events that led to the complaint and who never told the officer not to seek a criminal complaint. The court held that the jury would have been entitled to find that the defendant was responsible for the officer's actions. *Id.* at 536-537. The court held that there would be no liability if it were shown that the officer acted "entirely upon his own judgment and responsibility as a public officer," but that "where *by any means* it is shown that the officer is not expected to exercise his 'judgment and responsibility as a public officer' the defendant is responsible for the officer's subsequent acts." (emphasis added) *Id.* at 536.

In *Mason v. Jacot*, 235 Mass. 521, 525 (1920), the Court said that where the defendants, based upon "*an improper motive* set in motion the train of causation which naturally and proximately resulted in the arrest and accusation of the plaintiff," they will be held liable for initiating a malicious prosecution. (emphasis added). Plaintiffs have alleged such a motive here, where they claim that FBI agents assisted the principal

---

money.' The plaintiff offered no evidence to the effect that [defendant] encouraged or demanded that police institute criminal proceedings against [plaintiff]. Id. at 319.
[14] In this case, the creditor had told the officer that plaintiff had forged a check when in fact he had no information that she had signed it.

10

witness against plaintiffs in created perjured testimony in order to keep secret the fact that their own informant committed the murder in question. Under these circumstances, it can hardly be said that the agents "made a fair and full presentation of facts to the officer and left the course to be pursued to his judgment without pressure or coercion." *Id.* at 525-526.

The argument for recognizing the liability for malicious prosecution of law enforcement agents who manufacture evidence or suppress exculpatory evidence is particularly strong, as has been noted by Judge Posner:

> *If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.* Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir. 1988) (jury could find that defendants systematically concealed from prosecutors, and misrepresented to them, facts highly material to decision whether to prosecute) (emphasis in original).

This Court has previously recognized that there is nothing "anomalous" about imposing liability on officers who fabricate false charges, even though the actual prosecution is not accomplished by the officers. For the same reason that "[o]fficers who fabricate allegations in a criminal case cannot cloak themselves in the guise of prosecutorial immunity," *Britton v. Maloney*, 981 F.Supp. 25, 40, n. 27 (D.Mass. 1997), aff'd in part, rev'd in part on other grounds, 196 F.3d 24 (1st Cir. 1999), it is appropriate to impose FTCA liability on the government based on the actions of FBI agents who suborn perjury and suppress exculpatory information.

Plaintiffs have alleged that FBI agents were active throughout the prosecution and subsequent incarceration of plaintiffs in order to keep the lid of secrecy on their conspiracy. In *Mitchell v. City of Boston*, 130 F.Supp. 2d 201, 215 (D.Mass. 2001), Judge

11

Saris recognized that a person "who takes an active part in continuing or procuring the continuation of criminal proceedings initiated ... by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings," citing Restatement (Second) of Torts § 655 (1976) and *Bicknell v. Dorion*, 33 Mass. (16 Pick.) 478 (1835).[15] See also, *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001); *Stromberg v. Costello*, 456 F.Supp, 848, 850 (D.Mass. 1978).

Other jurisdictions have recognized liability for one who assists in continuing a prosecution initiated by another. *Kaminske v. Wisconsin Cent. Ltd.*, 102 F.Supp.2d 1066, 1073 (E.D.Wis.2000) (applying Wisconsin law); *Ware v. United States*, 971 F.Supp. 1442, 1461-1462 (M.D.Fla. 1997) (in FTCA claim recognizing that government was the legal cause for malicious procecution where FBI agent played a key role in the proceedings); *Purvis v. Hamwi*, 828 F.Supp. 1479, 1482 (D.Colo. 1993) (person who takes an active part in continuing criminal proceedings initiated by himself or another is subject to the same liability for malicious prosecution as if he had actually initiated the proceedings); *Banks v. Nordstrom, Inc.*, 57 Wash.App. 251, 256-257 (1990); *Simmons v. Telcom Credit Union*, 177 Mich.App. 636, 639 (Ct. of Appeals, Mich. 1989) (discussing liability for continuing a prosecution, the court notes, "when a defendant fails to make a full and fair disclosure, including the failure to disclose material exculpatory information

---

[15] Section 655 provides: "A private person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." Plaintiffs are not aware of any Massachusetts case in which the state courts have had an opportunity to explicitly embrace or reject Section 655. At the same time, the doctrinal underpinnings of imposing liability for continuing a prosecution are the same as those relied upon by the Massachusetts courts for imposing liability on those who influence public actors to initiate a prosecution and there is no doubt that Massachusetts courts would recognize liability under Section 655 if the occasion arose. In this respect we note that the Superior Court in Massachusetts has recognized liability under Section 647 of the Restatement (Second) of Torts, a parallel provision imposing liability on one who continues a malicious civil prosecution. *Fordham v. Cole*, 1991 WL 718188, p. 2 (Super. Ct. 1991).

12

which might dissuade a prosecutor from seeking a warrant ... an action for malicious prosecution may be pursued since the defendant's omission might effectively foreclose a proper exercise of discretion by the prosecutor"); *Denton v. Allstate Insurance Co.*, 153 Ill.App.3d 578, 583 (App.Ct. Ill. 1987) (also recognizing liability equivalent to initiating prosecution for participation of "so active and positive a character as to amount to advice and cooperation," and for knowingly giving false information to police); *Martin v. City of Albany,* 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614 (1977); *Seidel v. Greenberg*, 108 N.J.Super. 248, 257-258 (Superior Ct. of N.J. 1969).

Thus, it is established that the failure by an officer to disclose to the prosecutor exculpatory evidence, resulting in the continuance of a prosecution, renders the officer in possession of the information liable for malicious prosecution. *Sanders v. English*, 950 F.2d 1152, 1163 (5th Cir. 1992) ("Deliberately concealing or deliberately failing to disclose exculpatory evidence, like maliciously tendering false information, can form basis for inference that police officer acted with malice in initiating and maintaining prosecution, for purposes of arrestee's malicious prosecution action ..."); *Goodwin v. Metts,* 885 F.2d 157, 162-163 (4th Cir.1989) ("a police officer who withholds exculpatory information from the prosecutor can be found liable under both § 1983 and the common law" for malicious prosecution – officer could not "escape liability merely because he could not unilaterally have terminated the prosecution").

II.   PLAINTIFFS DO NOT PURSUE THEIR CLAIMS FOR FALSE IMPRISONMENT.

The government has argued that because plaintiffs were arrested on facially valid process, they cannot litigate their incarceration as a false imprisonment, but must proceed

instead upon their malicious prosecution claims. Plaintiffs do not contest the government's argument in this respect.

III.     PLAINTIFFS' CLAIMS DO NOT ARISE OUT OF LIBEL AND SLANDER.

The government contends that the plaintiffs' claim of malicious prosecution, insofar as it is based on allegations that government agents interfered with commutation petitions, is barred as a claim arising out of libel and slander. This misstates the nature of plaintiffs' claim, which is that FBI agents were involved for decades in continuing the malicious prosecution against Limone, Tameleo and Greco and covering up their earlier misconduct in initiating the prosecution. It is manifest that the essence of plaintiffs' complaint is that Limone, Tameleo and Greco were deprived of their liberty and wrongfully prosecuted, not merely that their reputations were tarnished by defamatory statements. Under applicable Supreme Court and First Circuit precedent, plaintiffs are not foreclosed from making this claim, whether or not the allegations against the government agents might also have constituted the torts of libel and slander.

In *Block v. Neal*, 460 U.S. 289 (1983), plaintiff claimed that FmHA employees had failed to properly inspect and supervise construction of her house. The FmHA employee assigned to the job had filed inspection reports containing no adverse comments on the construction work, which was, in fact, defective in numerous respects. The government argued that suit was foreclosed by the exception to FTCA liability for claims based on misrepresentation. The Supreme Court rejected this argument.

The Court held in *Block* that plaintiff's claim was not "wholly attributable" to reliance on the government's negligent misstatements, but rather alleged a breach of a different duty. The misstatements to plaintiff were not essential to the plaintiff's claim

14

that inspection and supervision of the builder were negligent. The Court noted that in the absence of the exception to FTCA liability for misrepresentation, the plaintiff might have brought a claim for negligent misrepresentation, and that there would be common questions in that case and her case for negligent inspection, but concluded that "the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well." *Id.* at 298.

Similarly, in the present case plaintiffs' claim is not "wholly attributable" to false statements made in connection with commutation proceedings, but is rather based on the duty not to engage in malicious prosecution. First, the interference with the commutation proceedings did not consist only of making false statements. Plaintiffs alleged that federal agents discouraged the commutations by various means, "including, but not limited to" the making of false statements.[16] Plaintiffs specifically alleged that FBI agents continued to withhold exculpatory information in their files,[17] and conducted baseless investigations of members of the Advisory Board of Pardons who initially had voted for Limone's commutation in order to chill support for future petitions.[18]

Second, the false statements to the Advisory Board of Pardons and the Governor are not essential to the underlying claim that there was a malicious prosecution of Limone, Tameleo and Greco. The fact that there is some potential overlap between a libel and slander claim and the malicious prosecution claim does not mean that the latter is excepted from the Tort Claims Act. Allegations that false statements were made are to be expected in most malicious prosecution claims. Thus the government's argument

---

[16] Compl. ¶¶ 36, 37, 40.
[17] Compl. ¶ 35.
[18] Compl. ¶¶ 38, 40.

would render meaningless the fact that the FTCA permits malicious prosecution claims based on misconduct by law enforcement agents.

The First Circuit has recognized that where a plaintiff has alleged a claim not excepted from FTCA liability, the fact that the allegations might be read to support another claim which is excepted is not fatal to the claim. In *Santiago-Ramirez v. Secretary of the Dep't. of Defense*, 984 F.2d 16, 20-21 (1st Cir. 1993), the court followed *Block* in holding that a claim for intentional infliction of emotional distress is actionable under the FTCA, although the factual allegations might also have supported a claim for false imprisonment or false arrest. The court noted that the Supreme Court has taken a strict reading of § 2680 and held that there is no justification ... to read exemptions into the Act beyond those provided by Congress," citing *Rayonier, Inc. v. United States*, 352 U.S. 315, 322 (1957). For the same reason that plaintiff had a claim based on intentional infliction of emotional distress in *Santiago-Ramirez*, the plaintiffs here can base their malicious prosecution claim in part on interference with commutation proceedings, even though these allegations might also have given rise to a libel and slander claim.[19]

IV. **PLAINTIFF HAS ALLEGED A VALID CLAIM BASED UPON THE NEGLIGENT HIRING, SUPERVISION AND RETENTION OF FBI INFORMANTS.**

The government's motion to dismiss does not address plaintiffs' claim that there was negligence in the selection, supervision and retention of Flemmi and Barboza as

---

[19] The cases cited by the government from the Eleventh and Fifth Circuits read the applicable Supreme Court precedent far more narrowly than the First Circuit has and do not govern resolution of this case. These cases are also distinguishable on the facts. In *Metz v. United States*, 788 F.2d 1528 (11th Cir. 1986), the court concluded that there was "no other government conduct" not excepted from FTCA liability on which plaintiffs' claims might have rested. Id. at 1535. That is not the case here, as we discuss in the text. In *Commercial Union Ins. Co. v. United States*, 928 F.2d 176 (5th Cir. 1991), the court held that "chain of causation from the alleged negligence to the alleged injury depends upon the transmission of misinformation by a government agent," id. at 179, and thus that the action was barred by the misrepresentation exception because it could be distinguished from *Block*. In the present case the chain of

informants and/or cooperating witnesses.[20] Plaintiffs have alleged that these persons were not qualified, suitable or appropriate cooperating witnesses or informants, and that Rico, Condon and Handley and other FBI agents failed to follow proper procedures and guidelines with respect to their selection and monitoring.[21] Plaintiffs have set out in detail why such persons were inappropriate and why their selection and monitoring were wrongful.[22] It is shocking that the FBI selected Flemmi as an informant when he had already told agents that his aspiration was to become the number one "hit man" in this area.[23] It is grimly ironic that the FBI should choose to use as an informant a person that the alleged bosses of organized crime in New England believed "did not use sufficient common sense when it came to killing people."[24] The FBI's misplaced allegiance to Flemmi was a lynchpin of the malicious prosecution of and conspiracy against Limone, Tameleo and Greco, because Flemmi was the actual killer of Deegan,[25] and Limone, Tameleo and Greco were prosecuted to keep secret Flemmi's guilt.[26]

Liability on this theory is appropriate under the FTCA, inasmuch as Massachusetts recognizes tort liability for negligent hiring, supervision and retention of employees and agents, including by a public employer. *Worcester Ins. Co. v. Fells*

---

causation of the malicious prosecution does not solely depend upon the transmission of the false information to the Massachusetts officials, as discussed in the text.

[20] To the extent that there is factual support for it, this claim may be based on acts or omissions by AUSA Harrington. See n. 1, supra.
[21] Compl. ¶¶ 9, 10, 11.
[22] Compl. ¶¶ 12-14.
[23] Compl. ¶ 12.
[24] Compl. ¶ 13.
[25] Compl. ¶¶ 7, 14-16.
[26] Compl. ¶ 26, et seq.

*AcresDay School, Inc.,* 408 Mass. 393 (1990); *Doe v. Town of Blanford*, 402 Mass. 831 (1988).[27]

### V. PLAINTIFF HAS ALLEGED A VALID CLAIM BASED UPON THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The government may also be held liable under the FTCA because the allegations concerning the conduct of government agents would result in liability under Massachusetts law for the tort of intentional infliction of emotional distress.[28] The First Circuit has specifically held that intentional infliction of emotional distress is a permissible basis for FTCA liability in *Santiago-Ramirez v. Secretary of the Dep't. of Defense, supra*. Massachusetts law recognizes liability for this tort. *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456 (1997).

There can be no argument that law enforcement agents who fabricate evidence and suppress exculpatory evidence in order to put innocent men on death row and to imprison them for decades "intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result," that such conduct is "extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community," and that it would cause emotional distress so "severe and of such a nature that no reasonable person could be expected to endure it." *Id.*, at 466.

---

[27] All of the factual allegations on which the claim based on negligent selection, supervision and retention are contained within the original complaint. We have moved to amend paragraph 47 of the complaint for clarity, in order to specify the Massachusetts tort theories on which FTCA liability is based. The original complaint did contain the allegation that the government was liable "under the law of the place" where the acts and omissions alleged in the complaint had occurred.

[28] Sufficient factual allegations to support a claim of intentional infliction of emotional distress are contained within the original complaint. We have moved to amend paragraph 47 of the complaint for clarity, in order to specify the Massachusetts tort theories on which FTCA liability is based. The original complaint did contain the allegation that the government was liable "under the law of the place" where the acts and omissions alleged in the complaint had occurred. To the extent that there is factual support for it, this claim may be based on acts or omissions by AUSA Harrington. See n. 1, *supra*.

## VI. PLAINTIFFS HAVE PROPERLY ALLEGED AN FTCA CLAIM BASED ON THE TORT OF COMMON LAW CONSPIRACY.

The government seeks to dismiss the FTCA claim based on a common law conspiracy based on the argument that plaintiffs are unable to establish the underlying Massachusetts torts which were the objects of the conspiracy.[29] This argument should be rejected on the basis of the discussion in the sections of this brief discussion the theories of tort liability.

The government's argument is also based on the claim that plaintiffs seek to impose FTCA liability on the government based upon the actions of people who were not federal employees. First, plaintiffs have alleged sufficient actions by federal government employees to establish a conspiracy among them and the motion may be denied on that basis. Second, with respect to whether federal agents controlled and supervised the day-to-day activities of others, this argument is premature. Plaintiffs are entitled to discovery on these issues. Since the motion must be denied because there is a sufficient basis for the claim in the actions of federal employees, there is no reason not to permit discovery with respect to additional actors who might have been sufficiently controlled by the government.

## VII. CONCLUSION

For the foregoing reasons, the plaintiffs respectfully request that the Court deny the motion to dismiss with respect to the government's liability for malicious prosecution caused by law enforcement agents; and liability for negligent selection, supervision and

---

[29] To the extent that there is factual support for it, this claim may be based on acts or omissions by AUSA Harrington, except to the extent the conspiracy's object was a malicious prosecution. See n. 1, supra.

retention of agents and employees, for intentional infliction of emotional distress, and for common law conspiracy, caused by any government employees.

                    Respectfully submitted,

                    The Plaintiffs,
                    By their attorneys,

Juliane Balliro (BBO# 028010)
Ronald J. Snyder (BBO# 638188)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 854-4000

Michael Avery (BBO# 024500)
Suffolk University Law School
120 Tremont Street
Boston, MA 02108
(617) 573-8551

William T. Koski (BBO# 277820)
KOSKI & KEARNS LLP
One Bowdoin Square, Suite 300
Boston, MA 02114
(617) 973-4525