UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER J. LIMONE, et als, ) <br> ) <br> Plaintiffs ) <br> ) <br> V. ) <br> ) <br> UNITES STATES OF AMERICA, et al, ) <br> ) <br> Defendants ) <br> ) | CIVIL ACTION <br> NO. 02-CV-10890-NG |

## FIRST AMENDED COMPLAINT OF
## PLAINTIFFS PETER J. LIMONE, OLYMPIA LIMONE, PETER J. LIMONE, JR., PAUL LIMONE, CAROLYN LIMONE ZENGA, JANINE LIMONE ARRIA, SAVERIO TAMELEO, ADMINISTRATOR OF THE ESTATE OF ENRICO (HENRY) TAMELEO, SAVERIO TAMELEO, ADMINISTRATOR OF THE ESTATE OF JEANNETE TAMELEO, SAVERIO TAMELEO

### Introduction

1.  This action for money damages is brought pursuant to the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Title 28 U.S.C. 2671, et seq. (hereinafter the "Federal Tort Claims Act") and Title 42 U.S.C. §§ 1983 and 1988, and under the common law of the Commonwealth of Massachusetts. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343, 1346(b) and on the supplemental jurisdiction of the court under 28 U.S.C. § 1367(a) for claims arising under state law.

2.  Plaintiffs allege that the federal and state officials sued herein conspired with each other and with other unnamed individuals to bring about the wrongful conviction and imprisonment of Peter Limone (hereinafter, "Limone"), Henry Tameleo



(hereinafter, "Tameleo") and Louis Greco (hereinafter, "Greco") in Suffolk Superior Court in the Commonwealth of Massachusetts in 1965 and thereafter.

## Parties

3. The following persons are the plaintiffs in this action:

   a. Peter J. Limone at all times material to this complaint was and is a resident of Middlesex County, Massachusetts. He is of full age.

   b. Olympia Limone at all times material to this complaint was and is married to Peter J. Limone. She is of full age.

   c. Peter J. Limone, Jr., Paul Limone, Carolyn Limone Zenga and Janine Limone Arria at all times material to this complaint were and are the children of Peter J. Limone and Olympia Limone. They are of full age.

   d. Roberta Werner was married to Louis Greco until 1970.

   e. Louis Greco died in prison on December 27, 1995.

   f. In her representative capacities, Roberta Werner is the Executrix of the Estate of Louis Greco and the Administratrix of the Estate of Louis Greco, Jr., the son of Louis Greco and Roberta Werner.

   g. Saverio Tameleo is the son of Enrico (Henry) Tameleo and Jeannete Tameleo.

   h. Jeannete Tameleo was married to Enrico (Henry) Tameleo.

   i. Enrico (Henry) Tameleo died in prison on August 18, 1985.

j. In his representative capacities, Saverio Tameleo is the Administrator of the Estate of Enrico (Henry) Tameleo and the Administrator of the Estate of Jeannete Tameleo.

4. The following persons are the defendants in this action:

a. The United States of America is the appropriate defendant under the Federal Tort Claims Act and was at all times material to this complaint the employer of H. Paul Rico, Dennis Condon, John Morris, John Connolly, James L. Handley and Edward F. Harrington.

b. H. Paul Rico (hereinafter "Rico"), Dennis Condon (hereinafter "Condon"), John Morris (hereinafter "Morris") and John Connolly (hereinafter "Connolly") were at all times material to this complaint special agents of the Federal Bureau of Investigation (hereinafter "FBI"). They are sued in their individual capacities.

c. James L. Handley (hereinafter "Handley") was the Special Agent in Charge of the Boston field office of the FBI from 1964 to 1969. He is sued in his individual capacity.

d. Frank L. Walsh was at all times material to this complaint a police officer of the City of Boston, Massachusetts. He is sued in his individual capacity.

e. Robert Renfrew was at all times material to this complaint a police officer of the City of Chelsea, Massachusetts. He is sued in his individual capacity.

3

5.  At all times material to this complaint, the defendants Walsh and Renfrew were acting under color of law, to wit, the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth of Massachusetts, the County of Suffolk, and/or the cities of Boston and Chelsea.

### Facts

6.  Limone, Tameleo and Greco were convicted in the Superior Court for Suffolk County, Massachusetts and sentenced to death, which sentence was later vacated and Limone, Tameleo and Greco were sentenced to life imprisonment, for the murder of Edward "Teddy" Deegan (hereinafter, "Deegan") on March 12, 1965.

7.  Deegan was in fact killed by Vincent James Flemmi (hereinafter, "Flemmi") and Joseph Barboza, a/k/a Joseph Baron, (hereinafter, "Barboza") and Roy French (hereinafter, "French"), Joseph Romeo Martin (hereinafter "Martin") and Ronnie Cassesso (hereinafter "Cassesso").

8.  Limone, Tameleo and Greco were innocent of and were wrongfully convicted and incarcerated for this murder. Their wrongful conviction and incarceration was the proximate result of the acts and omissions of the defendants alleged in the following paragraphs.

9.  Rico and Condon developed relationships with Flemmi and Barboza as informants and/or cooperating witnesses for the FBI.

10. Due to their criminal records and criminal activities, including multiple murders, their unreliability, their mendacity, their lack of credibility, the danger they posed to public safety, and their intentions to continue to break the law, all of which

were known to Rico and Condon, Flemmi and Barboza were not qualified, suitable or appropriate to serve either as cooperating witnesses or informants for the FBI. Rico and Condon, and other FBI agents, and their superiors, including, but not limited to, Handley, failed to follow proper procedures and guidelines with respect to the selection of cooperating witnesses and informants, with respect to the selection and employment of Flemmi and Barboza.

11. Rico and Condon, and other FBI agents, and their superiors, including, but not limited to, Handley, failed to follow proper procedures and guidelines with respect to monitoring and approving the activities of Flemmi and Barboza, with the result that as informants and/or cooperating witnesses, Flemmi and Barboza were allowed and/or encouraged to engage in actions that were illegal, including murder, conspiracy to murder, perjury and other crimes. Such acts were neither suitable nor appropriate, nor legal, for FBI informants and/or cooperating witnesses.

12. Rico and Condon and/or other FBI agents were informed as early as May 22, 1964 that Flemmi had stated that "all he wants to do now is to kill people," and in October, 1964, that Flemmi's stated aspiration was to become the number one "hit man" in the area.

13. Rico and Condon and/or other FBI agents were also advised as early as March 3, 1965, that alleged organized crime boss Gennaro J. Angiulo (hereinafter, "Angiulo") was of the opinion and had communicated it to alleged organized crime

boss Raymond Patriarca (hereinafter "Patriarca"), that Flemmi "did not use sufficient common sense when it came to killing people."

14. Deegan was murdered on March 12, 1965. On or before March 10, 1965, Rico and Condon knew or should have known, based upon information received by other FBI agents working in concert with them, directly or indirectly from Flemmi, Patriarca and others, that: Flemmi had formed the intent to murder Deegan as early as October 19, 1964; that Flemmi and Barboza had sought an "OK" from Patriarca to kill Deegan; and that as early as October 23, 1964, Limone, contrary to harboring murderous impulses concerning Deegan, had warned Deegan that Flemmi was looking for him and that Flemmi was out to kill him.

15. Rico, Condon, Handley and other FBI agents failed to warn Deegan, failed to properly control the activities of their cooperating witnesses and/or informants Flemmi and Barboza and failed to take any steps to prevent the murder.

16. Rico and/or Condon were informed directly or indirectly by Flemmi the day after the murder of Deegan that it had been committed by French, Cassesso, Martin, Barboza and Flemmi, and memorialized this information in a memorandum to Handley, the Special Agent in Charge of the Boston, FBI office.

17. Rico claimed in the said memorandum that FBI Agent Donald V. Shannon had transmitted the information contained therein to Renfrew, then a captain in the Chelsea Police Department.

18. Limone, Tameleo and Greco were indicted for the murder of Deegan. Limone was arrested and incarcerated on November 1, 1967; Tameleo, on October 25, 1967;

and Greco, in February 1968. They were convicted of murder in the first degree and conspiracy to murder and sentenced to death on or about July 31, 1968. Specifically: (i) Limone and Tameleo were convicted and sentenced to death as accessories in the murder of Deegan; Greco was convicted and sentenced to death for murder in the first degree and conspiracy to murder Deegan; and (ii) Limone, Tameleo and Greco were also convicted of conspiracy to murder Stathopoulos. On or about June 29, 1972 the United States Supreme Court vacated their death sentences and they subsequently were resentenced to life imprisonment.

19. Tameleo remained incarcerated until his death on August 18, 1985 and Greco remained incarcerated until his death on December 27, 1995.

20. Limone remained incarcerated until January 5, 2001, when he was released on bail. His conviction was vacated and a new trial ordered on January 8, 2001. On January 30, 2001 the Suffolk County District Attorney's Office announced that it would not prosecute the case further and Mr. Limone was discharged. In a written nolle prosequi filed with the Superior Court for Suffolk County, the District Attorney's Office stated that evidence newly discovered as of December 19, 2000, consisting of FBI documents, had undermined the credibility of the Commonwealth's principal witness Joseph Barboza at Limone's trial, and undermined the Commonwealth's theory of Limone's role in the murder of Deegan. The nolle prosequi stated that the Commonwealth had conducted a thorough review of the facts and the alleged evidence against Limone and concluded "that it does not now have a good faith basis – legally or ethically – to

proceed with any further prosecution of the defendant." The criminal proceedings were terminated in Limone's favor.

21. Criminal proceedings were constructively terminated in favor of Tameleo and Greco inasmuch as the allegations and testimony against Tameleo and Greco were based upon the same evidence and witnesses as the case against Limone. Had Tameleo and Greco not died while incarcerated, they would have joined in Limone's motion for a new trial described in paragraph 20 and their motions would have been granted and the criminal proceedings against them nolle prossed for the same reason that charges against Limone were nolle prossed.

22. The conviction and incarceration of Limone, Tameleo and Greco was a direct and proximate result of the wrongful acts and omissions of the defendants alleged herein.

23. FBI agents including, but not limited to, defendants Rico, Condon, Morris, Connolly and Handley, initiated, procured and continued the prosecution of Limone, Tameleo and Greco by actively participating in the said prosecution in numerous way including, but not limited to, the following:

   a. FBI agents, including, but not limited to, Rico and Condon, met with Barboza during the spring of 1967 and induced or coerced him into becoming a cooperating witness with the state prosecution of the Deegan homicide and thereafter assisted state prosecutors in developing Barboza as a witness.

   b. Before the grand jury appearance of Barboza that led to the indictment and during the prosecution of the Deegan homicide, Rico, Condon and

other agents of the FBI and Walsh knowingly suborned from and assisted the principal Commonwealth witness Barboza in committing perjury in testimony against Limone, Tameleo and Greco and suborned from and assisted Anthony Stathopolous in committing perjury against Greco.

    c.    Rico, Condon and other agents of the FBI provided material support and assistance to Barboza in exchange for his participation as a cooperating witness in the state prosecution of the Deegan homicide.

    d.    Rico, Condon and other agents of the FBI encouraged state prosecutors to prosecute Limone, Tameleo and Greco for the murder of Deegan, although they knew that the said persons were innocent of the crime. The said agents encouraged the prosecution of innocent parties in order to cover up and keep secret the involvement of the FBI informant Flemmi in the murder.

    e.    Rico, Condon, Morris, Connolly and Handley and other agents of the FBI actively participated in the continuation of the prosecution of Limone, Tameleo and Greco and the post conviction defense of the judgment in that case in numerous was including, but not limited to, those alleged below in paragraphs 27-40.

    f.    Participation of the FBI agents in the state prosecution of the Deegan murder was crucially important to the case, as reflected in a July 31, 1968 FBI memo after the convictions that stated, "Garrett H. Byrne, District Attorney, Suffolk County, stated that prosecution was a direct result of FBI investigation and particularly noted development of principal government witness, Joseph

9

Baron, aka Barboza, and Robert Glavin. Byrne was extremely praiseworthy of cooperation between FBI and his office. SAS H. Paul Rico and Dennis M. Condon were instrumental in development of Baron and Glavin."

24. Rico, Condon, Handley, and other agents of the FBI, Walsh and Renfrew failed to disclose information exculpatory to Limone, Tameleo and Greco in their possession to the attorneys prosecuting the Deegan murder case and representing the government in post-conviction proceedings. Agents and employees of the United States Department of Justice and the FBI did not disclose the said exculpatory information until on or about December 19, 2000.

25. Walsh obtained evidence in Florida that was exculpatory with respect to Greco and either destroyed or suppressed this information and did not furnish it to the appropriate prosecuting attorneys.

26. On diverse dates between the murder of Deegan and the present, Rico, Condon, Morris, Connolly, Harrington, other agents and employees of the Department of Justice and the FBI, Walsh and Renfrew engaged in numerous acts to keep secret information and evidence exculpatory to Limone, Tameleo and Greco and to cover up the identity of the true killers of Deegan.

27. In or about 1970 Barboza recanted his trial testimony against Limone, Tameleo and Greco in statements to James Southwood, William Geraway, Attorney F. Lee Bailey and Attorney Gerald Alch in which he stated that such testimony had not been true. On August 28, 1970, Harrington, acting outside any role as a prosecutor in judicial proceedings, visited Barboza in prison and forced and/or

persuaded and/or induced him to withdraw his recantation and affirm his earlier perjured trial testimony. Said acts by Harrington constituted interference with the administration of justice.

28. In 1971 Barboza was living in California as a participant in the witness protection program, under the name Joseph Bentley. At that time he shot and killed Clayton Wilson and subsequently was prosecuted for the capital crime of first-degree murder.

29. In 1972 Barboza wrote to Harrington and to the defendant Condon, seeking their assistance with the charge pending against him.

30. Harrington, Rico and Condon traveled to Santa Rosa, California to intercede on Barboza's behalf with local authorities responsible for his prosecution. As a result of their efforts, Barboza was permitted to plead guilty to second-degree murder and was sentenced to five years imprisonment.

31. Harrington subsequently appeared on Barboza's behalf in connection with parole proceedings, with the result that Barboza was released from prison after serving less than three years of his sentence.

32. The actions taken by Harrington, Rico and Condon on behalf of Barboza in connection with the Wilson murder were for the purpose of continuing to purchase his silence in connection with his false testimony in the Deegan murder trial and in order to keep Limone, Greco and Tameleo wrongfully incarcerated for Deegan's murder.

33. Following Barboza's recantation of his trial testimony, Attorney F. Lee Bailey sought to have him examined by a polygraph expert for assistance in determining whether his trial testimony or his recantation was true. One or more of the individual defendants herein, or others who were conspiring with them, urged the responsible officials to refuse permission for the polygraph test, for the improper purpose of covering up Barboza's perjury at trial and keeping Limone, Tameleo and Greco in prison, despite their innocence.

34. Following Barboza's recantation statements to Southwood, Southwood reported the statements to Suffolk District Attorney Garret Byrne, who repeated the information to Jack Zalkind, an assistant district attorney responsible for the case. Zalkind, acting in an investigatory capacity, then spoke with Southwood, who repeated Barboza's intention to recant his testimony to Zalkind. Shortly thereafter, Barboza telephoned Southwood and stated he would deny having made the recantation statements to him.

35. In 1982, with the support of the Deegan family, who believed in his innocence, Peter Limone filed a petition for commutation with Massachusetts authorities. The named defendants in this action and other FBI agents continued to withhold information from their files that would have established that Limone was innocent.

36. Morris and Connolly attempted to discourage members of the Massachusetts Advisory Board of Pardons from recommending commutation for Limone by various means including, but not limited to, communicating directly with members of the Board and providing, directly and/or through then United States Attorney

William Weld, false information concerning Limone to members of the Board and other Massachusetts officials.

37. On August 1, 1983, the Advisory Board of Pardons voted 5 votes to 2 to recommend commutation of Limone's sentence. FBI agents including, but not limited to, Morris and Connolly attempted to discourage Governor Michael Dukakis from granting commutation for Limone by various means including, but not limited to, providing false information concerning Limone to the office of the Governor. On September 20, 1983, Governor Dukakis denied the petition for commutation.

38. FBI agents including, but not limited to, Morris and Connolly caused state law enforcement officials and agents to investigate members of the Advisory Board of Pardons who had voted in favor of commutation to determine if they had relationships with "organized crime," with the intent to discourage members of the Board from supporting any future petitions for commutation by Limone. There was no basis in fact for such investigations.

39. On December 21, 1987, the Massachusetts Advisory Board of Pardons unanimously denied a hearing on a subsequent petition for commutation by Limone. FBI agents had caused false information concerning Limone to be transmitted to the Board through then United States Attorney Frank McNamara, Assistant United States Attorney Jeremiah O'Sullivan, Suffolk County District Attorney Newman Flanagan, Massachusetts Attorney General James Shannon and the Massachusetts Director of Public Safety William McCabe.

40. In 1983 and 1986 Greco applied for a commutation of his sentence. The Massachusetts Advisory Board of Pardons recommended commutation on each occasion. FBI agents discouraged Governor Michael Dukakis, in 1985, and Governor William Weld, in 1993 from granting commutation for Greco by various means including, but not limited to, providing false information concerning Greco to the office of the Governor. The conduct of FBI agents with regard to the pending commutation petitions of Limone had an adverse and chilling effect upon the handling of the commutation petitions by Greco.

41. In February 2002, Harrington testified before the House Government Reform Committee. Despite the earlier disclosure of F.B.I. memoranda described in paragraphs 12, 13, 14, 16 and 17 herein, Harrington suggested that Barboza had testified truthfully in the Deegan murder trial. Harrington further suggested in his testimony that Limone and Tameleo were involved in the Deegan murder. Harrington gave the said testimony for the purpose of continuing to cover up the wrongdoing of the individual defendants in conspiring to wrongfully convict Limone, Greco and Tameleo of the Deegan murder.

42. The aforesaid acts and omissions of the defendants and of Harrington were motivated, in part, by the intention of the defendants to discriminate against Limone, Tameleo and Greco because of their national origin, Italian-American.

43. As a direct and proximate result of the intentional, reckless and/or negligent actions and omissions of Harrington and of the defendants as set forth above, the plaintiff Peter J. Limone and plaintiffs' decedents Enrico (Henry) Tameleo and

Louis Greco were deprived of their liberty, deprived of their right to freedom of speech and to petition the government for redress of grievances, denied their rights to equal protection of the law, deprived of their liberty without procedural and substantive due process of law, denied a fair trial, subjected to cruel and unusual punishment, forced to endure emotional and physical suffering, and required to expend funds for legal defense.

44. As a direct and proximate result of the intentional, reckless and/or negligent actions and omissions of Harrington and of the defendants as set forth above, plaintiffs Olympia Limone, Peter J. Limone, Jr., Paul Limone, Carolyn Limone Zenga, Janine Limone Arria, plaintiff's decedent Jeannete Tameleo, Saverio Tameleo, Roberta Werner and plaintiff's decedent Louis Greco, Jr., were deprived of the loss of the income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of their husbands and/or fathers.

## COUNT I

### Cause of Action Against the United States
### Under the Federal Torts Claims Act

45. Paragraphs 1 through 44 are incorporated herein by reference as though fully set forth.

46. At all times material to this complaint, Rico, Condon, Morris, Connolly, Handley, Harrington and the other agents and employees of the Department of Justice and the FBI referred to herein, were acting within the scope of their employment.

47. The United States, if a private person, would be liable to the plaintiffs for the acts and omissions of its employees and agents described herein under the law of the place where said acts and omissions occurred, to wit, under common law tort claims for malicious prosecution; intentional infliction of emotional distress; negligent selection, supervision and retention of agents and employees, including informants; and common law conspiracy.

48. The plaintiffs submitted an Administrative Claim to the Federal Bureau of Investigation and to the United States Department of Justice on or about July 24, 2001.

49. The said agencies have failed to make a final disposition of the claims within six months after they were filed and the claimants have elected to deem them denied.

## COUNT II

### Bivens Cause of Action Against Federal Agents

50. Paragraphs 1 through 49 are incorporated herein by reference as though fully set forth.

51. The actions, conduct and omissions of Harrington and of defendants Rico, Condon, Morris, Connolly and Handley violated the rights of the plaintiff Peter J. Limone and plaintiffs' decedents Enrico (Henry) Tameleo and Louis Greco under the First, Fourth, Fifth and Eighth Amendments to the United States Constitution.

## COUNT III

### 42 U.S.C. § 1983 Cause of Action Against Individual State Actors

52. Paragraphs 1 through 51 are incorporated herein by reference as though fully set forth.

53. The actions, conduct and omissions of defendants Renfrew and Walsh violated the rights of the plaintiff Peter J. Limone and plaintiffs' decedents Enrico (Henry) Tameleo and Louis Greco under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

## COUNT IV

### Conspiracy Cause of Action Under Bivens and § 1983

54. Paragraphs 1 through 53 are incorporated herein by reference as though fully set forth.

55. The defendants Rico, Condon, Morris, Connolly, Handley, Renfrew and Walsh conspired with Harrington, with each other, and with other persons named and/or unnamed in this Complaint to wrongfully convict and illegally imprison Limone, Tameleo and Greco, and to keep secret information and evidence exculpatory to Limone, Tameleo and Greco and to cover up the identity of the true killers of Deegan.

56. The acts and omissions described in paragraphs 9 through 40 of this Complaint were taken and made in furtherance of and during the course of this conspiracy.

## COUNT V

### COMMON LAW MALICIOUS PROSECUTION UNDER MASSACHUSETTS LAW

57. Paragraphs 1 through 56 are incorporated herein by reference as though fully set forth.

58. The defendants Rico, Condon, Morris, Connolly, Handley and Renfrew, are liable to the plaintiffs for injuries and damages resulting from their institution of criminal proceedings against Limone, Tameleo and Greco with malice and without probable cause. Said proceedings terminated in favor of Limone and constructively in favor of Tameleo and Greco.

## COUNT VI

### COMMON LAW CONSPIRACY UNDER MASSACHUSETTS LAW

59. Paragraphs 1 through 58 are incorporated herein by reference as though fully set forth.

60. The defendants Rico, Condon, Morris, Connolly, Handley, Renfrew and Walsh are liable to the plaintiffs for injuries and damages resulting from the fact that they combined and conspired together, and with others unnamed, to employ illegal means for an illegal purpose, namely to wrongfully imprison, convict and maintain incarcerated Limone, Tameleo and Greco, and to cover up and keep secret their wrongful acts.

## COUNT VII

## COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER MASSACHUSETTS LAW

61. Paragraphs 1 through 60 are incorporated herein by reference as though fully set forth.

62. The defendants, Rico, Condon, Morris, Connolly, Handley, Renfrew and Walsh are liable to the plaintiffs for injuries and damages resulting from the fact that by their acts and omissions alleged herein they intentionally inflicted emotional distress upon the plaintiffs.

**WHEREFORE**, plaintiffs request that this Court:

1. Award compensatory damages to plaintiffs against the defendants, jointly and severally;

2. Award costs and attorney's fees to plaintiffs;

3. Award such other and further relief as this court may deem appropriate.


**THE PLAINTIFFS HEREBY DEMAND A JURY TRIAL ON THOSE COUNTS ON WHICH THEY ARE ENTITLED TO HAVE A TRIAL BY JURY.**

PETER J. LIMONE, OLYMPIA LIMONE,
PETER J. LIMONE, JR., PAUL LIMONE,
CAROLYN LIMONE ZENGA, JANINE
LIMONE ARRIA, SAVERIO TAMELEO,
ADMINISTRATOR OF THE ESTATE OF
ENRICO (HENRY) TAMELEO, SAVERIO
TAMELIO, ADMINISTRATOR OF THE
ESTATE OF JEANNETE TAMELEO,
SAVERIO TAMELEO,
By their attorneys,

Dated: October 7, 2002

William T. Koski, Esq.
BBO# 277820
KOSKI & KEARNS LLP
One Bowdoin Square, Suite 300
Boston, MA  02114
Tel. (617) 973-4525

Michael Avery, Esq.
BBO# 024500
Suffolk University Law School
120 Tremont Street
Boston, MA  02108
Tel. (617) 573-8551

Juliane Balliro, Esq.
BBO # 028010
PERKINS, SMITH & COHEN, LLP
One Beacon Street, 30th Floor
Boston, MA  02108-3106
Tel. (617) 854-4000