**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| PETER LIMONE, *et al.*, Plaintiffs, | ) | Civil Action No. 02 CV 10890 NG |
| v. | ) | |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF EDWARD GRECO'S MOTION TO AMEND THE JUDGMENT**

Plaintiff is loath to challenge the Court's meticulous and well-reasoned opinion, especially given the "staggering" difficulty of placing a dollar amount on intangible losses such as those he suffered. *See* Memorandum & Order Re: Bench Trial ("Op.") at 183. Moreover, if he were likely to receive any of the Court's large award to the estate of his father, Louis Greco, Sr.,[1] then he would not burden the Court with this motion. Edward ("Eddie") Greco, however, is entitled only to the amount awarded to him personally, and that award does not reflect his singularly painful losses. Eddie Greco brings this motion to amend or alter the judgment under Rule 59(e), or in the alternative Rule 52(b), to correct an error in assessing his damages – namely, the lack of individualized consideration of the harm he suffered.

[1] Roberta Werner will receive all of the money awarded to the estate of Louis Greco, Sr., absent a will contest, because Louis Sr.'s purported will left all of his money to Louis Jr., who died without a will. Under Massachusetts' intestacy law, all of the money in Louis Jr.'s estate will go to Ms. Werner, Louis Jr.'s mother. *See* Mass. Gen. L. c. 190 §§ 2, 3.

As the Court stated, "[c]ompensation for intangible harm is separate and cumulative for each plaintiff who suffers a loss; even though they suffer the loss of the same person, each plaintiff's loss is their own." Op. at 213. In this passage and others, the Court correctly acknowledged the rule that a damages award must reflect the peculiar circumstances of each plaintiff. The Court found that while the Limone and Salvati children "were robbed of the day to day nurturing of a parent," Eddie Greco and his brother "were never able to recover from their loss" and "their lives were destroyed." Op. at 216. Despite their very different harms, the Court incorrectly awarded the exact same amount for loss of parental consortium to each of the ten children from three different families. This damages award did not recognize Eddie Greco's "particular story." Op. at 206.

## ARGUMENT

### THE COURT SHOULD INCREASE THE DAMAGES AWARD TO EDDIE GRECO BECAUSE THE AMOUNT HE RECEIVED ERRONEOUSLY AND UNJUSTLY FAILS TO REFLECT THE UNIQUELY HARSH EFFECTS THAT HIS FATHER'S CONVICTION HAD ON HIM

#### A. The Court Should Exercise Its Broad Discretion Under Rules 59(e) And 52(b) To Correct Its Own Error And To Prevent Injustice.

The Court's failure to determine damages individually resulted in an unduly low award to Eddie Greco. This method of awarding damages is erroneous and unjust.

Rule 59(e) permits the district court "to alter or amend the judgment." Fed. R. Civ. P. 59(e). The rule allows the court to correct a manifest error of law or fact or to prevent injustice. *See Venegas-Hernandez v. Sonolux Recs.*, 370 F.3d 183, 190 (1st Cir. 2004); *Nat'l Metal Finishing Co. v. BarclaysAmerican/Continental, Inc.*, 899 F.2d 119, 124 (1st Cir. 1990); *see also, e.g., Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) ("Although Rule 59(e)

does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment, we agree with our sister circuits that district courts may alter or amend judgment 'to correct a clear error of law or prevent manifest injustice.'") (citations omitted). The district court enjoys "wide discretion" in determining whether or not to grant the motion. *Fernandez v. Leonard,* 963 F.2d 459, 468 (1st Cir. 1992); *accord, e.g., Nat'l Metal Finishing*, 899 F.2d at 125.

A motion under Rule 52(b) similarly allows for "the correction of any manifest errors of law or fact," *Nat'l Metal Finishing*, 899 F.2d at 123, and is also committed to the district court's broad discretion, *id.* at 125.

As discussed below, and as the Court itself repeatedly acknowledged, it is axiomatic that an award of damages must reflect the particularities of each plaintiff's situation and of the harm that each plaintiff suffered. *See, e.g.,* Op. at 213, 216-17. The Court's failure to do so constitutes manifest error, for which relief under Rule 59(e) or Rule 52(b) is appropriate.

**B. By Awarding The Same Amount Of Loss Of Consortium Damages To Eddie Greco As To All Of The Other Children, The Court Violated The Principle That Intangible Damages Must Reflect The Peculiar Circumstances Of Each Plaintiff.**

**1. The harm suffered by Eddie Greco was of a different magnitude.**

The children of Peter Limone, Joseph Salvati and Louis Greco, Sr., all suffered a grievous loss of parental consortium as a result of their fathers' wrongful convictions. Without minimizing the harm to the other children, the evidence showed that the damage to Eddie Greco as a result of his father's conviction was different in kind. The Greco family "disintegrated" as a result of Louis Sr.'s conviction.[2] Op. at 200. Due to heroic efforts by their parents, the Limone and Salvati

[2] While the harm to Eddie's brother Louis was similar in some respects, there was little evidence in the record of the effect these events had on him.

families stayed together, incorporating their wrongfully convicted fathers into family life as much as possible. *See* Op. at 185, 189, 192-93, 216. Because Eddie Greco's mother was unable to continue the support she provided her children before the conviction, much less to serve as both a mother and a father to Eddie, he suffered a more severe loss. Eddie Greco was abused and neglected by his mother. In a word, his life was "destroyed." Op. at 216.

As counsel argued in closing, the loss Eddie Greco suffered was comparable to the death of both parents.[3] Bench Trial Transcript ("Tr.") Day 22 at 158. In some ways, Eddie's loss was worse, because after his father's conviction and before his mother physically left the family, she had already abandoned her parental responsibilities and subjected Eddie to both neglect and abuse. He was neglected when his mother started drinking and stopped caring for her family. Eddie had to cook and care for his brother. Eddie had to eat "other children's leftovers at school." Op. at 201. Eddie was left wearing dirty, ill-fitting and tattered clothing, with holes in his shoes. Proposed Findings of Fact by All Plaintiffs ("Pl. Proposed Findings") at 173 (¶ 599) (citing Tr.

---

[3] Eddie Greco's trial testimony showed that he himself experienced the loss this way. As he stated,

> [i]t's like when I'm 15 or 16, and it's like I'm fighting a fight and I'm losing like, okay round 1, here's my father, he goes to jail, you know I just lost round 1. Round 2, now my mother abandons me, I'm losing this fight, and now my aunt's getting sick, the family's failing apart. I didn't want to see another person die in front of me.

Pl. Proposed Findings at 177-78 (¶ 615) (citing Tr. Day 13 at 55). Since at the time of his aunt's illness Eddie's parents were still alive, this statement reveals his feeling that it was as if they were dead. In addition, Eddie testified that when people asked him about his mother after she had abandoned him, he told them that she was dead. Pl Proposed Findings at 175 (¶ 601).

Day 13 at 40-41; Trial Exhibit 2034). He was abused when his mother physically assaulted him, "taking out her pain and frustrations on Eddie." Op. at 201.

Eddie described the time from his father's conviction, when he was eleven years old, to the period after his mother abandoned him, when he was thirteen, as the "blackest time" of his life. Pl. Proposed Findings at 171 (¶ 590(a)) (citing Tr. Day 13 at 40). When his mother abandoned Eddie and his brother, she left without making any provisions for their care. Op. at 201. While he was able to live for a time with his Aunt Marie, who loved him, Eddie had to work while he was in high school to pay rent in order to live with his aunt, and his uncle resented his presence. Op. at 201. This was far from the happy "normal" childhood Eddie had before. Op. at 199-200. Eddie's life after his father's conviction was vastly different from the lives of the Limone and Salvati children, who received parental support, guidance, and affection from their mothers, fathers, and extended families.

This Court noted that the loss of a parent "can severely impact a child's development and have a major influence on a child's welfare and personality throughout life." Op. at 212 (quoting *Villareal v. Dep't of Transp.,* 774 P.2d 213, 217 (Ariz. 1989)). Eddie Greco's loss of parental support, comfort, and guidance changed the course of his life. Eddie Greco never married or had children. As a child he did well in school and expected to go to college; as a result of his father's conviction, he never did. Pl. Proposed Findings at 166 (¶ 582(e)), 168 (¶ 583(i)). Eventually Eddie Greco turned to illegal drugs in an attempt to find relief from his pain. Pl. Proposed Findings at 178 (¶ 620). Now, Eddie Greco is recovering from lung cancer. He lives in a nursing care facility in New Orleans, and he is unable to work. Op. at 202. In contrast, the Limone and Salvati families remained intact. As a result, their children have done well: all but one are

married, all eight have children of their own, and all have been productive members of society. *See, e.g.,* Pl. Proposed Findings ¶¶ 517, 528, 537-38, 552, 568, 948(a)-(d). The Limone and Salvati children remain physically and emotionally close to their parents.

**2. Damages for loss of consortium must be tailored to the individual plaintiff.**

As this Court recognized, "there is no scientific formula or measuring device for awarding damages for the incommensurable," such as loss of consortium and emotional distress. Op. at 183. Rather, the amount awarded must be based on a rational assessment of "the evidence adduced at trial." Op. at 183 (quoting *Ruiz v. Gonzalez Caraballo,* 929 F.2d 31, 35 (1st Cir. 1991)). As the Court's observation implies, and as numerous courts have stated explicitly, such an award is inherently personal and must therefore derive from the particular facts and circumstances of the suffering endured by each individual plaintiff. *See, e.g., McDonald v. Federal Labs., Inc.*, 724 F.2d 243, 247 (1st Cir. 1984) ("Placing a value on human suffering is always a subjective enterprise, turning on the jury's sensibilities to the facts and circumstances presented *in a particular case.*") (emphasis added); *Schneider v. Nat'l R.R. Passenger Corp.*, 987 F.2d 132, 137 (2d Cir. 1993) (award of intangible damages must be made in light of "[plaintiff's] particular injuries" and "considering all of the relevant factors and circumstances *in this case*")(emphasis added); *see also Kennon v. Gilmer,* 131 U.S. 22, 26 (1889) (damages "must depend very much on the good sense and sound judgment of the jury upon *all the facts and circumstances of the particular case*") (emphasis added).

The necessity of tailoring a damages award to the individual plaintiff comports with the bedrock principle of tort law that the defendant "takes his victim as he finds him" and must therefore compensate the plaintiff for his unique injuries. *Doty v. Sewall,* 908 F.2d 1053, 1059

(1st Cir. 1990) (citing, *inter alia, Vosburg v. Putney,* 80 Wis. 523 (1891)); *see also, e.g., Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1294 (7th Cir. 1987) (Easterbrook, J.) ("In some cases unusual sensitivity will enhance the loss; in others unusual hardiness will reduce it; payment of the actual damage in each case will both compensate the victim and lead the injurer to take account of the full consequences of its acts."). Eddie Greco's family was not strong enough to survive his father's wrongful conviction, causing Eddie particularly severe and lasting hardship. Fair compensation for his losses requires this Court to increase his award.

Because emotional and other "nonpecuniary" damages are personal, the trier of fact in a multi-plaintiff suit must separately consider the harms suffered by each plaintiff. In circumstances remarkably similar to those presented here, reviewing courts, including the Supreme Court and the First Circuit, have vacated damages awards that did not take into account each plaintiff's individual pain and suffering. *See Hatahley v. United States,* 351 U.S. 173, 182 (1956); *Mitchell v. Evelyn C. Brown, Inc.,* 310 F.2d 420, 424 (1st Cir. 1962); *Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1452-53 (5th Cir. 1990); *United States v. Hatahley,* 257 F.2d 920, 925 (10th Cir. 1958); *cf. Acevedo-Garcia v. Monroig,* 351 F.3d 547, 571-72 (1st Cir. 2003) ("The individualized nature of the twenty verdicts reflects the jury's careful attention to the peculiar circumstances of each plaintiff, and evinces the jury's desire to craft an appropriate award for each claimant."); *Adams v. NVR Homes, Inc.,* 141 F. Supp. 2d 554, 570 (D. Md. 2001) ("Undoubtedly, the [psychological] damages sustained by each individual plaintiff must be assessed separately.").

In *Hatahley,* the Supreme Court reversed and remanded a lump-sum award made to a group of plaintiffs that failed to differentiate between the respective damages, including those for

mental pain and suffering, suffered by each individual plaintiff. *Hatahley* was a Federal Tort Claims Act case alleging that the federal government improperly destroyed the plaintiffs' horses and burros. After a bench trial, the district court awarded $100,000 to all of the plaintiffs collectively, without making any "attempt to allot any particular sum to any of the 30 plaintiffs." *Id.* at 182. In remanding the case to the district court, the Supreme Court noted the necessity of individualized findings regarding "the consequential damages and pain and suffering of each [plaintiff]." *Id.* When, after remand, the district court again failed to provide an individuated assessment of each plaintiff's emotional injury – but instead gave each plaintiff the same amount – the Tenth Circuit again reversed. As the court stated, "Pain and suffering is a personal and individual matter, not a common injury, and must be so treated." *United States v. Hatahley,* 257 F.2d 920, 925 (10th Cir. 1958).

Other appeals courts have vacated trial judges' damages awards when the amounts awarded to multiple plaintiffs were not individualized. In *Mitchell,* the First Circuit vacated the district court's award where the amount received by each of eight plaintiffs did not reflect a consideration of their respective individual injuries. *See Mitchell,* 310 F.2d at 424 (finding error where, *inter alia,* "the amount of the award for pain and suffering, physical and mental, was not made on an individual basis, personal to each claimant"). In *Transco Leasing*, an FTCA wrongful death action resulting from a plane collision that caused several deaths, the court vacated the damages awards because of the trial court's failure to explain why different children all received the same amount for the loss of their father, or why two wives received the same amount for the loss of their respective husbands. As the court reasoned,

> each of the widows received $500,000 for the loss of the love and affection of their husbands. The evidence reveals that both widows were happily married, but their respective reactions to their losses were markedly different. The district court, however, made no distinction. Although an argument can be made that Mrs. Manuel suffers inwardly, while Mrs. Ahart's suffering is more visible, such an argument is purely speculative. There may very well be reasons why the district court thought that the grief suffered by each of the widows was identical, but we cannot discern any such reasons from our review of the record, and no such reasons were articulated by the district court.

*Transco Leasing Corp., 896 F.2d* at 1452-53. The Fifth Circuit similarly faulted the district court for failing to explain why all three children of the same father received identical amounts. The Court further noted that the amount recoverable for the loss of care and affection of a parent "may differ among the plaintiffs on the basis of differing degrees of affection which existed between deceased and the plaintiffs, or differing degrees of affection and guidance needed by minor plaintiffs." *Id.* at 1453 (applying Louisiana law).

The lesson for the instant case is clear. This Court's award of the same amount of damages for loss of consortium to each of the ten children of the men who were wrongly convicted fails to reflect "the peculiar circumstances of each plaintiff." *Acevedo-Garcia v. Monroig,* 351 F.3d at 571-72. This Court repeatedly recognized the need for individual determinations of damages for loss of consortium. *See* Op. at 213 ("Compensation for intangible harm is separate and cumulative for each plaintiff who suffers a loss; even thought they suffer the loss of the same person, *each plaintiff's loss is their own.*") (emphasis added); *id.* at 216 ("In cases in which damages were awarded for loss of parental consortium, courts have carefully considered the circumstances of each parent-child relationship."); *id.* at 217 (citing cases for the proposition that damages must consider the "actual affect upon the parent-child relationship ...

the nature of the child's relationship with the parent, the child's emotional and physical characteristics, and whether other consortium-giving relationships are available to the child").

One factor particularly supportive of a larger damages award for Eddie Greco is the lack of "other consortium-giving relationships" available to him. *Reagan v. Vaughn,* 804 S.W.2d 463, 467 (Tex. 1990); *see Campbell v. Diguglielmo*, 148 F. Supp. 2d 269, 273, 274-75 (S.D.N.Y. 2001) (in affirming total jury award of $2 million to son whose father was killed, noting, *inter alia*, "the absence of other positive parental figures" because the boy's mother was incarcerated in another state); *Marin v. United States,* 814 F. Supp. 1468, 1476 (E.D. Wash. 1992) (loss of mother was "greater than an average loss" where, *inter alia*, mother was sole parent); *West v. Maxwell,* 2001 WL 789654, at *6 (Del. Super. June 29, 2001) (affirming jury award of more than $2 million to son who, after his mother's death, no longer had stable home and "drifted from place to place"). Eddie Greco's mother left her husband and children for Las Vegas, taking the money Eddie earned delivering newspapers. Op. at 204. Unfortunately, Eddie did not have anyone to fill in the gap left when he was abandoned by his mother.

### 3. Eddie Greco should be fully compensated for the destruction of his family and the lasting effect it had on his life.

Eddie Greco's injury, like this case as a whole, is *sui generis*. While the Court may look to other awards in other cases for guidance, no other jury or court has had to place a value on the destruction of a child's life due to his father's almost thirty-year imprisonment – a fact the Court recognized. Op. at 216 ("[N]o court has awarded damages for loss of consortium based on the wrongful imprisonment of a parent."); *see also* Op. at 210 ("[T]he instant case stands out from the field of malicious prosecution and wrongful imprisonment cases in the extremity of its

suffering; few cases are directly comparable."). Plaintiff acknowledges the difficulty of the Court's task but respectfully submits that $200,000 does not begin to compensate him for what he has endured.[4] Eddie Greco was left without a responsible parent from age eleven until he was an adult, and his life continues to bear the imprint of this cruel loss.

The harm to Eddie Greco should place his damages at the high end of the spectrum of awards to children who have lost one or both parents. *See*, *e.g., Citrus County, Fla. v. McQuillin*, 840 So.2d 343, 344, 348 (Fla. Dist. Ct. App. 2003) (affirming award of $4.4 million for loss of parental consortium for a girl who was seven years old when her mother died in an auto accident); *Campbell,* 148 F. Supp. 2d at 273, 274-75 (upholding total award of $2 million); *West,* 2001 WL 789654, at *6 (affirming jury award of more than $2 million); *see also McQuillin*, 840 So.2d at 348 n.2 (collecting cases from around the country with awards to children ranging from $3 million to $8 million for the loss of a parent or parents).[5]

**CONCLUSION**

This Court should amend its decision concerning damages to Eddie Greco by issuing a damages award that compensates him for the harm he suffered as result of federal law

---

[4] Counsel did not suggest a particular amount during closing arguments, and does not do so now, given the prohibition against such requests under Massachusetts law. *See Gath v. M/A-Com., Inc.,* 440 Mass. 482, 495 (2004).

[5] In *General Motors Corp. v. Burry,* 203 S.W.3d 514 (Tex. App. 2006) cited by this Court, Op. at 218, the appellate court affirmed an award of $1,010,000 to girls whose mother suffered permanent brain damage in a car accident. However, their father took over parental responsibilities and apparently did a "great job." *Burry,* 203 S.W.3d at 543, 551. Unlike Eddie Greco, the girls in that case were able to stay in their family home with their remaining parent caring for them. *Id.*

enforcement agents framing his father and allowing Louis Greco, Sr., to spend the rest of his life in prison, unable to care for his boys. Eddie not only lost his father's support, guidance, advice and companionship. He also lost his family, his home, and his future. As the Court itself found, his life was destroyed. The award to Eddie Greco should take into account his lack of another person to provide needed parental support, guidance, and advice. The Court can and should increase the amount of damages awarded Eddie to be consistent with the Court's findings that he suffered more than the other children in this case.

RESPECTFULLY SUBMITTED,
For the Plaintiff**,**

/s/ Howard Friedman

Howard Friedman
BBO #180080
David Milton
BBO #668908
**Law Offices of Howard Friedman P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114-2022
(617) 742-4100

/s/ Michael Rachlis /hf

Michael Rachlis
Edwin L. Durham
**Rachlis Durham Duff & Adler**
542 South Dearborn Street, Suite 1310
Chicago, IL 60605
(312) 733-3950

**CERTIFICATE OF CONFERENCE PURSUANT TO L.R. 7.1(A)(2)**

Pursuant to L.R. 7.1(A)(2), I certify that I have conferred in good faith with counsel in an attempt to resolve the issue that is the subject of the accompanying motion.

/s/ Howard Friedman

Howard Friedman

**CERTIFICATE OF SERVICE**

I certify that on this day I caused a true copy of the above document to be served upon the attorney of record for all parties via CM/ECF.

Date: 8/2/02_______ __/s/ Howard Friedman________________

______________________Howard Friedman